IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-49

No. 141A21

Filed 6 May 2022

IN THE MATTER OF: B.R.L.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 18 February 2021 by Judge J.H. Corpening, II, in District Court, New Hanover County. This matter was calendared for argument in the Supreme Court on 18 March 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Jane R. Thompson for petitioner-appellee New Hanover County Department of Social Services.*

*Battle, Winslow, Scott & Wiley, P.A., by M. Greg Crumpler, for appellee Guardian ad Litem.*

*Sydney Batch for respondent-appellant mother.*

BARRINGER, Justice.

¶ 1 Respondent appeals from an order terminating her parental rights to her minor child B.R.L. (Brian).[1] After careful consideration, we affirm the trial court's order terminating respondent's parental rights.

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

## I.    Factual and Procedural Background

On 14 August 2018, the New Hanover County Department of Social Services (DSS) filed a petition alleging Brian to be a neglected juvenile. Since January 2018, DSS had been working with Brian's family regarding issues of domestic violence, substance abuse, mental health, stability, parenting, employment, and medical care for Brian. DSS alleged that respondent stabbed Brian's father[2] during a domestic violence altercation, both parents admitted to a history of heroin use and current alcohol use, and respondent was unemployed.

On 28 November 2018, Brian was adjudicated a neglected juvenile. To achieve reunification, the trial court ordered respondent to complete a substance abuse assessment and comply with all recommendations, submit to random drug screens, complete a comprehensive clinical assessment (CCA) and comply with all recommendations, complete a parenting education program and demonstrate learned skills during interactions with Brian, obtain and maintain safe and stable housing, complete the Reproductive Life Planning Education class, and complete a Domestic Violence Offender Program (DVOP).

For the first year of her case, respondent did not participate in her case plan. After a permanency planning hearing on 25 July 2019, the trial court found that respondent had failed to complete any portion of her case plan, failed to maintain

---

[2] Brian's father is not a party to this appeal.

contact with DSS and the guardian ad litem, and failed to appear for three requested drug screens. The trial court set the permanent plan as adoption with a concurrent plan of reunification. On 24 September 2019, DSS petitioned to terminate respondent's parental rights to Brian on the grounds of neglect, pursuant to N.C.G.S. § 7B-1111(a)(1), and willfully leaving Brian in foster care for more than twelve months without making reasonable progress under the circumstances in correcting the conditions that led to Brian's removal, pursuant to N.C.G.S. § 7B-1111(a)(2). After the termination-of-parental-rights hearing, the trial court adjudicated that both grounds for termination alleged by DSS existed. The trial court then concluded it was in Brian's best interests that respondent's parental rights be terminated and terminated respondent's parental rights.

## II.    Analysis

### A. Standard of Review

¶ 5        The North Carolina Juvenile Code sets out a two-step process for termination of parental rights: an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109 to -1110 (2021). At the adjudicatory stage, the trial court takes evidence, finds facts, and adjudicates the existence or nonexistence of the grounds for termination set forth in N.C.G.S. § 7B-1111. N.C.G.S. § 7B-1109(e). If the trial court adjudicates that one or more grounds for termination exist, the trial court then proceeds to the

dispositional stage where it determines whether terminating the parent's rights is in the juvenile's best interests. N.C.G.S. § 7B-1110(a).

¶ 6 Appellate courts review the adjudication to determine whether the findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law. *In re E.H.P.*, 372 N.C. 388, 392 (2019). In doing so, we limit our review to "only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407 (2019). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019). Further, "[f]indings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. at 407. We review the trial court's conclusions of law de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

**B. Adjudication of Neglect**

¶ 7 The trial court concluded that grounds existed to terminate respondent's parental rights to Brian for neglect pursuant to N.C.G.S. § 7B-1111(a)(1). The Juvenile Code authorizes the trial court to terminate parental rights if "[t]he parent has abused or neglected the juvenile" as defined in N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1) (2021). A neglected juvenile is defined, in pertinent part for this matter, as

a juvenile "whose parent . . . [d]oes not provide proper care, supervision, or discipline . . . [or c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2021).

"[E]vidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect—is admissible in subsequent proceedings to terminate parental rights." *In re Ballard*, 311 N.C. 708, 715 (1984). "The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *Id.* "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding." *Id.* (emphasis omitted).

On appeal, respondent does not challenge the trial court's finding of past neglect but does challenge portions of findings of fact 52, 78, and 80 along with the trial court's determination that there was a probability of repetition of neglect. Below, we address only those challenges that are necessary to support the trial court's adjudication that neglect existed as a ground for termination. Since a single ground for termination is sufficient, we need not address respondent's challenges to the other ground adjudicated by the trial court.

Respondent challenges the portion of finding of fact 78 that states she was not capable of parenting Brian as of the date of her testimony at the termination hearing on 21 September 2020. However, this finding was supported by clear, cogent, and

convincing evidence. At the termination hearing, respondent's therapist testified that respondent was not capable of parenting as she could only parent for a day or two. Further, the therapist testified that it would take about six months of consistent therapy before respondent would be able to parent Brian, and if respondent fell into her old habits at any point during that time, the entire six-month period would need to restart. Additionally, respondent does not challenge finding of fact 118 that in early September 2020, she herself admitted to her social worker that she was not ready to parent Brian. Thus, finding of fact 78 is supported by clear, cogent, and convincing evidence.

¶ 11      While respondent also challenges the trial court's determination that there was a likelihood of future neglect, that determination was clearly supported by numerous unchallenged findings as well as finding of fact 78. If a respondent cannot parent at the time of the termination hearing, then there is a substantial likelihood of future neglect because the respondent lacks the fitness to care for the juvenile at the time of the termination hearing. *See In re Ballard*, 311 N.C. at 715. Here, respondent was not capable of parenting Brian at the time of the termination-of-parental-rights hearing. Additionally, "[a] parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.A.*, 374 N.C. 865, 870 (2020) (cleaned up). As discussed below, respondent failed to complete many key aspects of her case plan.

¶ 12    DSS created a case plan to help respondent address the issues that led to Brian entering DSS custody, including domestic violence, substance abuse, mental health concerns, need for stability, parenting skills, and consistent medical care for Brian. Respondent's case plan included but was not limited to completing a substance abuse assessment and following its recommendations, submitting to random drug screens, completing a CCA and complying with all recommendations, obtaining and maintaining safe and stable housing, completing a parenting education program and demonstrating skills learned from it during interactions with Brian, and completing a DVOP.

¶ 13    However, respondent did not follow the case plan and address the issues that led to Brian's removal. First, respondent never successfully completed a DVOP. Nor did respondent obtain appropriate housing. Respondent also did not address her mental health needs. In addition, while respondent obtained CCAs, she did not fully follow the recommendations she received from them, such as completing a substance abuse intensive outpatient program. Respondent's visitation with Brian was sporadic. Finally, respondent refused to submit to several requested drug screens and repeatedly tested positive for alcohol use despite respondent's alcohol abuse being one of the reasons for Brian's removal. Thus, the trial court found that the concerns that originally brought Brian into DSS's care remained unaddressed. Given these findings, the trial court's determination that there was a likelihood of repetition of

neglect was supported. Furthermore, because the findings detailed above are more than sufficient to support the determination that there was a likelihood of repetition of neglect, we need not address respondent's challenges to portions of findings of fact 52 and 80.

### III.     Conclusion

The trial court did not err when it determined that a ground existed to terminate respondent's parental rights for neglect pursuant to N.C.G.S. § 7B-1111(a)(1). Further, respondent does not challenge the trial court's determination that terminating her parental rights was in Brian's best interests. Accordingly, we affirm the order terminating respondent's parental rights.

AFFIRMED.